Good morning, Your Honors. I'm James Hunter of Pachovsky, Stang, Zeeland, Jones, and I represent the Bankruptcy Estate of Debtor Adamson Apparel, Inc. as counsel for Alberta Stahl, the newly appointed permanent Chapter 7 trustee. Were you, by the way, qualified or elected to substitute? She was elected, and she accepted as of December 5th of this month. And I take it from the motion we got this morning that she has not formally moved to substitute as the real party in interest. I'm sorry, Your Honor. She is moving as of the 12th, which is 7 days after she accepted her appointment. It was up to 7 days. It didn't have to wait for 7, but that's good. Well, we filed a notice to inform the Court that she had been elected and had retained our firm to represent her, and she will be filing on that. Okay. And we are also filing today an opposition to the renewed request. So unless the Court has any further questions, I'd like to get you in there. Well, is that jurisdictional, the fact that you haven't filed the substitution? Well, if we had filed the motion for substitution, the motion wouldn't have been granted, and then we would arguably also not have had a granted motion for substitution. Well, but we could grant it right here. If you we have filed the notice. Well, no, but I mean, does it cause you jurisdictional problems? I mean, they seem to keep catching you. They're trying to catch on technicalities, as it were, but some technicalities are actually jurisdictional. I don't believe this is jurisdictional. We have been appointed to represent the trustee. The substitution of a real party in interest or, you know, somebody who's taken as a successor to somebody else happens every day of the week in this Court. So let's just go to the merits, if we can, because presumably when that motion is filed, we can grant it unless there's unless somehow your client isn't really the trustee. Which I don't take their argument to have anything to do with it, but merely a technicality. But they can correct us if we're wrong on that. Thank you, Your Honor. We also, I suppose, could treat the notice as if it were a motion to substitute and grant it. Yes, Your Honor, and if the Court would do that, I believe that would be appropriate. Okay. Let's go to the merits. I would like to reserve four minutes for rebuttals. I'm sorry. I'm not sure if I'm going to be able to do that.    I'm not sure if I'm going to be able to do that. And with respect to there's two issues that are really raised. With respect to the pure legal issue, I do not plan to address that today because I think that's adequately set forth in the briefs. The other issue that is potentially confusing, and I would like to spend my time on explaining to the Court or helping clarify to the Court, is the relationship of the guarantees. This relates to a number of guarantees in cash collateral pledges. And the ultimate question here is whether Mr. Simon's a creditor or not, right? Correct. If he is a creditor, then you've got a preference. If he's not a creditor, you're out the window, right? And the issue is whether or not when you look at the guarantees, any one of them in fact remains with only a deferral. They seem to admit, and I believe it's clear, that the August 5th guarantee in fact provides deferral language. But what they do is they say, well, that is actually wiped out either by the April 3rd guarantee that was before that or the April 25th guarantee. But there's kind of an additional layer here, because at first they won on summary judgment, and then the district court sent it back to the bankruptcy court and said, no, you know, you've got to have a hearing on this. And so the bankruptcy court had a hearing and looked at all these waivers and made certain factual findings. Isn't that right? Yes. And I believe it's so. And so some of those factual findings we're going to be stuck with here. I don't believe so. You don't get to argue it completely anew after some of these things have been, you know, that if the bankruptcy court dealt with many of the arguments about whether it was ambiguous, what they meant, and all of those things. Now, as a legal matter, if giving all of those factual findings, if the deference that they're entitled to, if there was not clear error, you're in a different position than when you were arguing the summary judgment motion about those. We are. But one of the rules of law is that you can look at the agreements. They have to be looked to as a matter of law. And if they're clear on their face, you don't get to oral testimony or the subjective intent. But part of the reason that the Court set aside the summary judgment is that they weren't clear and said, go back and let the bankruptcy court listen to all of this and decide what they mean. And your Honors can look at the agreements. So you were fine then that it was ambiguous, but now they're clear? No. I never thought they were ambiguous. I always thought that it was clear that there was a deferral language. And I believe that what there are is a law. But the district court held as a matter of law they are ambiguous, and that's why he sent it back to the bankruptcy court. That's right. And your Honors can disagree with that. That's a determination of law which is reviewed de novo. Why should we disagree with it? I'm going to try and explain, Your Honor. There are essentially three types of three guarantees. They're all limited guarantees. And what I think both courts failed to appreciate was that there was one set of guarantees which started with the November 12, 2000, limited guarantee, which is the excerpts of record 100 through 106, that essentially was a limited guarantee for $2 million. At the same time, and it's also attached as part of the excerpts of record, there was a cash collateral agreement relating to that $2 million that is the excerpts of record 108 through 117. That was for $2 million, and he posted a separate $2 million to secure that guarantee, that limited guarantee, and that cash collateral. That is the guarantee that was amended by the August ‑‑ I'm sorry, the April 25th guarantee on which we're relying, which has the deferral language. That guarantee restatement and amendment of guarantee specifically said that with respect to the November 12th guarantee and cash collateral agreement, and it cites to both of them, those were amended. There was to be a deferral, and the amount was raised to $2.3 million. So that was one separate set of guarantees. A second guarantee was dated initially February 11th. That was a limited guarantee only. There was no cash collateral attached to it. It's excerpts of record 1119 through 125, and that was amended by the April 9th letter limited guarantee. Again, no cash collateral, where the limited guarantee on February 11th, which happened for the amount of $500,000, was raised to $1 million. So you had those two guarantees. You had one for $2 million cash collateral raised to 2.3. You had a second limited guarantee, no cash collateral, which was $500,000. It was raised to $1 million. And finally, you had the August 5th, 2003, letter limited guarantee, which was. Sotomayor, as you're going through each of these, I want to kind of take a step back if I can, because it's kind of hard to be down in the weeds at oral argument. Does Simon have the right to purchase the notes that are held by the lender and thereby acquire the right to get payment from the debtor? Absolutely. And that is why it is a sham transaction. Okay. So in your view, an insider is an insider is an insider, and the bankruptcy court cases that say that following the 1994 amendments to the Bankruptcy Code, in your view, are correct? Yes. The ProPage and the other cases that state that, I believe, are correct, that it is sham and is a matter of bankruptcy law, an attempt by an insider to waive it when there's no economic effect, because he can simply go ahead and purchase the notes. Right. I mean, you've got all these page numbers coming at us, and that's a little bit hard to follow, but that's ultimately the question, and the opposing counsel, I hope, will address that same question. I think, though, if it's so clear, why is there not any Ninth Circuit or circuit authority for the proposition that these insider waivers are invalid as a matter of law? Well, there's no circuit court authority on this. It just has not come up. But why? If this has been going on all the time, and they're all shams from your perspective, why is it only coming up? Who knows? I really can't answer why no one has raised it and gone up to the maybe they've all settled, maybe they've all resolved. I would like to, before I reserve time for rebuttal, I would like to at least point to one key document which I think summarizes the points I'm trying to make about the limited guarantees, which is the March 31, 2004 letter, after all the guarantees had been executed, that summarizes when they were paid off, and I think it's just critical, and if the Court could just review one additional document, I would ask it to review this. It's at pages 157 through 159 of the excerpt of records, and what it says, it goes through and it summarizes all of the documents on the first page, and it refers to the three separate guarantees I've referred to, the November 12 guarantee, the April 9 guarantee, and the April 5 guarantee. And what it says, and here's the critical part, I believe, on page 158, paragraph 3. I'd just like to read this because I think it's, I think it is very probative. 3 says, In connection with Simon's payment of all obligations under the Simon note, Simon irrevocably authorizes and directs CIT to apply as of the date hereof cash collateral currently maintained in a segregated account at CIT in the name of Arnold Simon in the amount of $2,364,090.14 delivered to CIT in connection with Simon's obligations under the August 5, 2000 guarantee and the August 5, 2003 cash collateral pledge agreement. So you're saying, in fact, he did receive an insider preference? Yes, but I just want to read the list. And a portion of the cash collateral currently maintained in a segregated account in the name of Simon in the amount of $1,170,000 delivered to CIT in connection with Simon's obligations under the November 12, 2002 guarantee. In other words, there were separate collateral accounts, separate monies under the separate November 12 guarantee and the August 5. They were entirely separate, and it was confirmed in paragraph 6 of that document at 159 that the November 12, 2002 guarantee remained in full force in effect, and that is defined as amended by the August 5. Let me say, I just got one question to ask you. Sure. I want to know, was the debt to CIT fully paid off on December 18, 2003, when the BP clothing, you know, amount, roughly $5 million was, in fact, diverted? No, I think it was fully paid off March 31st when it took the, March 2004, when it got the amounts from the cash collateral accounts. Well, CIT had a lien on that money coming from that inventory anyway, right? It did. So there was really nothing unusual that CIT got the money directly. No, it was simply, but it did benefit the insider, and there was a, he was a creditor at that time because there was only a deferral. But I would save the rest of my time for rebuttal unless the Court has any questions it wants to ask before. He may reserve. Thank you. Good morning. Good morning. Thank you. May it please the Court. My name is Leslie Cohen. I'm here with my colleague, Jamie Williams. Could you speak a little louder, please? Yes. Sorry. Hold the microphone towards you or something. Thank you. My name is Leslie Cohen, and I'm here with my colleague, Jamie Williams, on behalf of the appellee, Arnold Simon. Just to briefly go over the dismissal issue. It's a technicality. They have the right to make the motion, or we can treat what they have already filed as a motion. And I take it your argument is purely technical, that there's nothing erroneous in their assertion that they are now substituted. I think there needs to be an appellant, and they may have the right to substitute. That has not been presented to the Court unless you are. Okay. Let's talk about the merits. Okay. Does Mr. Simon have the right under these documents to purchase the loan and become the to get the money from the debtor directly? Your Honor, the documents do not confer that right on him one way or the other. They don't say you can. That's not my question. Does he have that right? If they, if the documents don't prevent it, then presumably he has that right. I would imagine that he probably had the right to approach the lender and say, can I buy it? I don't think. Oh, all right. If he does, then why isn't this, why aren't the bankruptcy courts that have dealt with this issue recently correct, that that is the kind of contingent debt that makes him a creditor and an insider is an insider is an insider, and that this is really just a way to get around the three-month bar? A couple of things. A couple of reasons, Your Honor. First, unlike our situation, none of the case law that goes their way on that point, and it is out there, actually examined the intent of the parties and interpreted the contract. No, they interpreted the intent of Congress, which is to keep insiders from getting a preference. Isn't that the most important thing that we have to pay attention to, is what Congress intended? I think Congress's intent is important, and the right of parties to contract and the idea that there is some hypothetical right. In other words, there's no – if, as Your Honor suggests, there was an absolute right that Mr. Simon could go to the lender and say, I'm exercising my right, I am buying this note today or tomorrow or whenever, then I think that that might be right. But if I were the bank, I probably would say, no, I'm not selling you that note. Why would I? Then I'm setting myself up for the same kind of preference. The case law has picked up on this issue. And it's – Well, not necessarily, because the bank is not an insider. So if the bank, you know, they may be happy to get all their money out from the insider. Everybody has the same incentive. They all want to get this preference, because if the bank gets the insider to pay them, they're free and clear. They've got their money. And now under your scenario, the insider is also free and clear, because they're not a creditor. So the bank and the insider have, it seems to me, an identical interest in thwarting the bankruptcy estate. I think that if there's a flaw in that reasoning, it's that, first of all, we're not saying that the one-year period doesn't apply. We acknowledge Mr. Simon is an insider. An insider – and whether the bank was paid inside 90 days or outside, we recognize – we don't dispute that he's an insider. I think that's clear. I think what's different from the scenario Your Honor is describing is that, sure, the bank has an interest in getting paid. But in getting the guaranteed debt paid, the insider, he does – he does waive his claim. He doesn't have any – he has no creditor standing in the estate. And I would add that the bank – Well, that's the question for decision as to whether he has a deferral or whether for some other reason he remains a creditor. Well, it's also – I'm hearing the appellant basically say that anything to quote Judge Graber, an insider is an insider is an insider. So all of these transactions are a sham, and so the bankruptcy court got it wrong. And then I don't know if you're taking the other position, but I can't – are – could there be a sham transaction that would not – and that – is that something that the bankruptcy court decided here? I mean, are you – even if we assume the bankruptcy court achieved the right result in this case, do you concede that it's possible to have an invalid or sham waiver in some cases? I think that there – one of the cases, and I think it was – I forgot which one. Maybe it was the USA. But one of their cases, there was actually a conditional waiver. And it said, if anybody calls us an insider or if anyone – if anyone either calls us an insider or – So do you concede that there can be a sham waiver? I think with different kinds of language, not the language that we have here. I know you're not – I said I know you're not conceding it here, but you concede that if the facts were different, there could be a sham waiver. I think that if the facts were different insofar as a conditional waiver as opposed to an unconditional waiver, they are. Now, they were part of the bankruptcy proceeding, the appellant, correct? Yes. Did they ever argue this was a sham waiver, or did they just say that it was unambiguous and what was – did they argue it was a sham waiver there? They did not argue sham waiver. Their argument was that the waiver was – the waiver in full. He's limited and that he remains a creditor because it's only a deferral. That's the other part of their argument. They said that because one of the agreements, which was actually the pledge, not the guarantee, but that because one of the several agreements, there are four or six of them, had deferral language, therefore, that trumped everything else and all the waivers. And I think that was the reason why the district court sent it back, saying it seems a little vague, we need to get testimony on that. Was Simon a guarantor on any other of Adamson's debts or only on the CIT loan? I don't know that information from the record, Your Honor, as to whether there were other guarantees. What I do know, and what the record does reflect, is two important facts here. One, that the payment to CIT was purely from its own collateral. So as an alternative ground, and this is actually an issue that was addressed in the Telesphere case, where Judge Weedoff stated that because the creditor was only paid from their own collateral, it wouldn't be a preference. So we have that same fact pattern here. We did argue that. That was not the basis of Judge Robles' ruling at the trial court, but it is in the record. And that's consistent with the reasoning of Judge Weedoff in Telesphere. Secondly, in this case, Mr. Simon did pledge personal monies as well and paid all of that to CIT. So when the 5 million roughly was paid to CIT, was there how much, was there still CIT debt owed? Yes, which Mr. Simon satisfied personally thereafter. So we actually paid. How much was the total? How much debt remained that was owed to CIT? I want to say about 3 to 4 million that Mr. Simon paid personally. And that was paid months later? It was several months later, yes. So when the debt was initially paid, the portion of debt paid by the debtor, that was from the sale of CIT's collateral. So CIT would have been paid that money. This was part of that BP clothing? Exactly. Because they had a lien on that. Exactly. So they were going to get paid anyway. So as I say, that's a separate argument. Judge Robles found that Mr. Simon was not a creditor. So he didn't rule specifically on that. But it is also in the record. Well, now some courts and commentators have argued that these insider waivers have no economic impact and are merely an effort to eliminate by contract the preferential transfer rules in the Bankruptcy Code. What's your position on that? Two things. One, as noted by the Ninth Circuit in the Suffolk case, they felt that having those, they really disagreed with that reasoning. They said whether there's a waiver or not is not going to incentivize the insider to go one way or the other. That predated the 1994 changes to the Bankruptcy Code, correct? It was a 1993 decision? It was. Okay. And so the 94 amendments were designed in part to deal with this issue. So, and I think, didn't Suffolk also hold that the guarantors were in fact creditors? I may be misremembering it, but. I have to check my notes. But at all events, we have nothing post-1994 on the, what used to be called the Deprisio waivers. And the Court ended by saying, whether a waiver of the guarantor's rights against the debtor suffices to circumvent this rule, referring to the Bankruptcy Code, is a question we leave for another panel and another day. So I think it's not decided in Suffolk, the question that we have here. Well, I agree. Suffolk does not decide this question. My point is that in looking at the policy consideration, and by the way, to just go back, Suffolk said that the waiver isn't sufficient to get you around the one-year rule, pre-Deprisio, or pre-amendment of the Code. Pre-94. But the question that we have today, they specifically said. Agreed. We are not deciding this issue? I completely agree with that. Okay. But what Suffolk does say is at page 20, I think, because an insider gives up something of little or no practical value when he executes a waiver, he's only very slightly, if at all, more likely to cause a preferential payment. So they're saying this is not incentivizing insiders one way or the other. That's what Suffolk says. And my other point is that these waivers, as set up by the lenders, they're not designed to protect the insiders. They're designed to protect the banks. The banks don't really need them anymore because the Code's been amended, but the banks are not trying to help guarantors ever. I know that from my experience, that the banks aren't doing this to help the guarantor. But why did this help your client quite a bit? Because he had guaranteed his debt, and here's now $5 million paid off with a one-year preference period that gets him off the hook for that $5 million. Because that $5 million, that's the exact question under Section 547b-5. And the answer to that is because that was fully secured anyway, unlike any of the cases cited by the appellant. There's no case where a fully secured debt that gets paid off – excuse me, it wasn't fully secured. It was fully secured by every penny that paid it back, leaving a balance owing. Now, had the debtor turned around and paid the difference, the shortfall, from its cash, that may look like a preference. But you said several different things that are confusing to me. The $5 million, was that fully secured? You started by saying yes, and then you said, well, no, it wasn't. So it is not fully secured, correct? It was, yes. Every penny that went to CIT. Wait, wait, stop. It is not fully secured. Is that true? The $5 million was fully secured. It was fully secured. Yes. There was more due. There was a shortfall. After that was paid, there was a further shortfall due that Mr. Simon paid personally. That's the $3 million. Exactly. But they're not going after the $3 million he personally paid. Correct. It's the 5. That's right. But there was a lien. Correct. And so had the company, and that's the test under Section 547b-5, had the company been liquidated on that day under Chapter 7, the trustee would have had to pay off the $5 million to CIT anyway, because it was fully secured. And that would have left a shortfall owing to CIT, just as did in fact happen, which Mr. Simon went on to pay personally. And none of the cases cited, I agree there's no circuit level authority one way or the other. I agree that SUFLA does not address the issue and leaves it open. So the bankruptcy trial that happened after the summary judgment was reversed, what happened there that is binding on what we decide? What factual, what, you know, what, from your perspective? Because I think I understood the appellant to say, yes, there were certain factual findings, but that they got it all wrong, whether it was clear error, whether it was legal error or whatever it was, that it, that the deferral was clear from the language of the documents. And so even though I guess they didn't move for summary judgment, back when you moved for it, they're essentially saying they would be entitled to summary judgment or judgment as a matter of law, right? Right. So what's your perspective on what the bankruptcy court did and how it weighs into what we're doing right now? Okay. My perspective, I know I'm running out of time. You get to answer a question if we do it. Thank you. My perspective on what the bankruptcy court did was it took specific testimony and evidence on the intent of the parties to interpret the contract under New York law, which was the choice of law of the parties. And it made a decision based on that law and based on the evidence that was presented that there was an intentional, full and complete waiver. And I note that this is what distinguishes us, because all the cases that say the waiver isn't effective, not a one actually took testimony or evidence on the waiver and the intent of the parties. And that's what separates us from the case law cited by the appellant. We had actual factual findings which have, there was no controverting evidence and there's been nothing pointed to in the record other than an interpretation of language that's already been ruled upon at the trial court level. Sotomayor, there are also, I'm looking back at this, but I am not seeing any findings with regard to the issue that we were discussing a moment ago, which is whether the $5 million was fully secured. Is there a finding about that? I don't think the parties were talking about that. It seemed to me it was all about something else. Your Honor, I'm pretty sure this is in the trial transcript, excerpt of record 70, excerpt of record at page 70, where there's a discussion that Mr. Simon paid the shortfall. That's not my question. In the Bankruptcy Court's findings, I did not find this, which is not at page 70. It starts at page 82, I think. I think, I don't think that the Bankruptcy Court made a finding on that. I think it's in the record. Sotomayor, that's something that you're arguing, but we don't have a finding that would be binding upon us. We argue it based on the record, that's right. I have one last question. What about, what was the significance of any of your client not filing a claim in the Bankruptcy Court? I know both the district court and the Bankruptcy Court mentioned that, but, I mean, of course, if he was off the hook for his guarantee, he wouldn't have had any reason to file a claim in the Bankruptcy case. Well, he would have to the extent that he paid additional monies on the debt. And I think that the reason that the Bankruptcy Court felt it was relevant, and the district court, is that it was further and additional evidence of the intentional waiver of any rights against the debtor. And I would add that that topic is addressed specifically in the, I'm sorry, I'm losing the case site, the Buckhead Oil case. So if he had not felt that he couldn't go against the debtor, then he would have filed that. Exactly. Exactly. And in Buckhead, interesting, there was a waiver, just as we had here. And then the guy did turn around and file a proof of claim in the Bankruptcy Court. And the Bankruptcy Court, the trustee turned around and said, well, hey, you filed a waiver. I mean, you have a waiver. You can't turn around and file a claim. But that's not dispositive. People decide not to for a variety of reasons, including that they are an insider. But whether he chose to or didn't choose to doesn't fully answer the question. Well, I think there was testimony in the record and findings in the order that it was based on his understanding, belief, and agreement that he had, in fact, fully waived his claim. There is testimony in the record. Have the appellants ever said to you that they didn't think that $5 million was fully secured? Never. Have they said that they believed it was fully secured? I don't believe that's ever been a disputed issue. Well, we're going to ask, so. Yes. Thank you. Thank you. Mr. Hunter, you have some time remaining. Thank you, Your Honors. First of all, I would like to point out that. Was that $5 million fully secured? That was not litigated. In fact, the. Was it fully secured? You know that one. If it was fully secured, how could you have gotten it anyway? It was, it was not. All of the obligations weren't fully secured. That's not the question. There's five. Is it true that there's the $5 million at stake? That was not litigated or asserted as a defense. I'm asking what your claim is. The evidence did not come in. There was no claim with respect to that. Wait, wait, we're talking past each other. How much money are you trying to get into the estate? $4,980,000. So it's the $5 million. Yes. Okay. So one question is, what difference does it make if that specific amount was fully secured, then even if all your other arguments are correct, it doesn't really help the bankruptcy estate, does it, or does it? I believe it would, Your Honor, but I'm not prepared to argue that because the trial below was limited to the issue of whether it was accredited. The court bifurcated. But you're claiming that, and my understanding of the case law is if it was fully secured, then CIT was entitled to it, and you can't go against CIT to cop that back up. There's case law now to that effect, right? And it's their obligation. It would have been their obligation at trial to establish that it was fully secured, and they did not do that. So since they did not establish it was fully secured, we were entitled to cover it. And the issue was not litigated, and there is no finding by the bankruptcy court or by the district court on this question. Correct. And, in fact, it wasn't reserved as one of the issues in the pretrial. But it's an exercise in futility if then it's – if it was fully secured. But we don't know. We don't know, and it can't actually – I believe that they're barred at this point from arguing that it was because of the issues that were reserved to be tried at the pretrial order, which did not include that issue. And there is no cross appeal saying that we should win anyway because of some other ground. That's correct. Okay. So all that was tried, because the Court bifurcated at the time of the trial, was the issue of whether it was a creditor. The Court decided that he was a creditor, so it never reached any of the other issues at the trial. With respect to the argument that we never raised or the argument that as a matter of law he could not qualify as having properly waived any rights, he remained an insider. I would just like to point out that in the first appellate court opinion, which was in 2007, before it came down for trial, the Court, in its opinion, and it's the excerpt of Record 31, said – has a footnote for – because the case is remanded for the bankruptcy court to determine triable issues of fact, the Court declines to address the issue of whether an insider guarantees waiver of subrogation indemnity against the debtor would preclude preference liability. In other words, we raised that issue on the first appeal. It was not reached in the first appeal because the Court found that it was sending it back. Furthermore, in the pretrial order, when they say that we didn't raise that issue, the pretrial order, which is an excerpt of Record 35, we specifically stated as a legal issue the following issues of law and no others remain to be litigated. One, does an insider's – insider guarantors waiver of subrogation indemnity against the debtor render him not a creditor of debtor? We have always made this argument. It has never been reached before, but it was reached as part of the trial. We made the argument again in our trial briefs, and the Court – the bankruptcy court, in finding that he was a creditor, rejected that argument, and the district court specifically, in its opinion, rejects the argument. So we have never not raised the argument. Thank you, counsel. The case just argued is submitted. We appreciate very much the helpful arguments of both parties in this complicated manner, and we are adjourned for this morning's session.
judges: Gilman, Graber, Callahan